## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-00129

Madwire, LLC

      Plaintiff(s),

v.

Clayton Wood, individually, and in his official capacity as a member of Identity Labs, LLC, and Identity Labs, LLC, a California Limited Liability Company

      Defendant(s).

---

## COMPLAINT

---

PLAINTIFF by and through its attorney Brian Kelly, for its Complaint against DEFENDANTS, alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.      This is an action arising out of the Defendants' wanton, wilful and deliberate copying of all aspects of Plaintiff's website. Plaintiff, Madwire, LLC and herein referred to as Madwire, is recognized as one of the premier digital marketing companies in the Country. Madwire offers its services through its over 60 consistently branded "Marketing360" websites, including its flagship website marketing360.com. Madwire has taken great steps to protect its intellectual property rights, and had received multiple registrations with both the United States Patent and Trademark Office ("USPTO") and the United States Copyright Office. Defendant, for its own benefit, copied substantially all of the website design and associated elements located at

marketing360.com and reproduced such content on its website domain identitylabs.com where it offers services competitive with Madwire. The sheer amount of reproduced content is staggering, and implicates a variety of intellectual property protected under multiple facets of law including the doctrines of copyright, trademark and trade dress.

2.      Madwire seeks injunctive relief and damages suffered as a result of The Defendants' (a) copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 et seq., (b) contributory copyright infringement, (c) vicarious copyright infringement, (d) federal trademark infringement under the Lanham Act 15 U.S.C. 1111 et seq., (e) contributory trademark infringement, (f) trade dress infringement under the Lanham Act 15 U.S.C. § 1125, and (g) misappropriation and unfair competition under Colorado Common Law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1121, 1331, 1332, 1338 and 15 U.S.C. § 1121, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4.      This Court has personal jurisdiction over Defendant, who has minimum contacts with this State and District, by conducting business, committing torts, and causing injury in this State and District pursuant to the Colorado Long Arm Statute Colo. Rev. Stat. § 13-1-124. Defendants have purposefully availed themselves of the jurisdiction of the federal district of Colorado by committing the infringing acts on property located in the state of Colorado and causing tortious injury to business interests in the state of Colorado.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

6.      Plaintiff, Madwire, LLC (hereafter, "Madwire") is a Limited Liability Company formed under the laws of the state of Colorado and is located at 3420 E. Harmony Rd. Fort Collins Colorado. Madwire offers digital marketing services and marketing software to small and medium sized businesses.

7.      Upon information and belief Defendant, Identity Labs, LLC (hereafter "Identity Labs") is a California Limited Liability Company formed under the laws of the state of California, and has its principal place of business at 1822 Page St. San Francisco, California. Defendant Clayton Wood is listed as the businesses registered agent.  Defendant offers services directly competitive with Madwire.

8.      Upon information and belief, Defendant, Clayton Wood (hereafter "Wood" and together with Identity Labs the "Defendants") is an individual who resides at 1822 Page St. San Francisco, California. Upon information and belief, Defendant is the sole manager and member of Identity Labs. Upon information and belief, Defendant Wood has been involved in and/or managed a number of businesses directly competitive with Madwire. Further, upon information and belief Wood gives regular seminars and speeches on matters directly related to the digital marketing industry in which Madwire is apart.

**FACTS**

9.      Madwire is a tech enabled services company that provides digital marketing software and services as well as website design and development services to small and medium sized businesses.

10.     Madwire, through its Marketing 360 platform, is recognized as a leader in the digital marketing industry.

11.     Madwire has invested significant resources into developing and maintaining its branding and intellectual property resources, including its copyrights, trademarks and the trade dress of its websites by maintaining a distinct and memorable look and feel across each of its vertical websites.

12.     Madwire operates over 60 websites under the marketing360.com branding under names such as: roofermarketing360.com, chiropractormarketing360.com, etc. (the "Marketing 360 Verticals"). Madwire has taken great steps to ensure that each domain utilizes consistent branding across each vertical. Each vertical differs only in text and some images that are modified to be relevant to the vertical in question.

13.     The Marketing 360 Verticals are very popular with over half a million visitors in the six months from June 2016 through the end of November 2016.

14.     The Marketing 360 Verticals have a look and feel that is immediately recognizable and wholly unique within the industry. The look and feel of the Marketing 360 Verticals has contributed greatly to the continued success of Madwire.

15.     The Marketing 360 Verticals are unique and well known in the industry and have acquired secondary meaning as a source identifier for Madwire's products and services.

16.     Marketing360.com is the most popular vertical with over 300,000 unique visitors in the six months from June 2016 through the end of November 2016.

17.     Madwire generates the bulk of this traffic through digital marketing campaigns for relevant keywords such as "web marketing", "online marketing company" and "seo marketing" on various search engines and social media platforms such as Google, Bing and Facebook.  Madwire is among the most visible businesses marketing for digital marketing keywords. For example, on Google, Madwire's overall impression share - the percentage of

people searching for relevant terms who saw Madwire's ads for marketing360.com - during the six months ending with November 2016 was 63%. During this time Madwire had over 6.3 million impressions on the search engine Google.com.

18.     For relevant keywords, Madwire has an even greater impression share. By way of example, for the keywords "website advertising," "web marketing" and "seo marketing" Madwire's impression share was 90%, 83% and 88% respectively during the six months ending with November 2016.

**Madwire's Copyright Registrations**

19.     Madwire registered a copyright in the text, photographs and 2D artwork located on the website www.marketing360.com on July 14, 2014. The US Copyright Office granted Madwire registration number VA 1-920-430 for the work "Marketing360.com."

20.     As the owner of the copyrighted work, Madwire has the exclusive right to authorize the reproduction of its: (i) copyrighted work; (ii) preparation of derivative works based upon the copyrighted work; (iii) the public display of the literary work; and (iv) distribution of copies of the copyrighted work to the public by sale, or other transfer of ownership or by rental lease, or lending.

21.     Madwire puts all visitors on notice of its copyrights by placing a © on the footer of each page of marketing360.com and the Marketing 360 Verticals.

22.     Madwire further puts website visitors on notice in the website Terms of Use located in the footer of each page of its websites. The Terms of Use state:

> The Website and its entire contents, features and functionality (including but not limited to all information, software, text, displays, images, video and audio, and the design, selection and arrangement thereof), are owned by the Company, its licensors or other providers of such material and are protected by United States and international copyright, trademark, patent, trade secret and other intellectual property or proprietary rights laws.

These Terms of Use permit you to use the Website for your personal, non-commercial use only. You must not reproduce, distribute, modify, create derivative works of, publicly display, publicly perform, republish, download, store or transmit any of the material on our Website…

## Madwire's Trademark Registrations

23.    Madwire applied for and received registered trademark number 4459243 for the word mark "Marketing 360" for digital marketing services from the USPTO.

24.    Madwire applied for and received registered trademark number 4784512 for the design mark "Marketing 360" for digital marketing services from the USPTO.

25.    Madwire applied for and received registered trademark number 4299589 for the word mark "Top Placement Ads" for digital marketing services from the USPTO.

26.    Madwire applied for and received registered trademark number 4598488 for the design mark "UXi Convert Intelligently" for digital marketing services from the USPTO.

27.    Madwire applied for and received registered trademark number 4470840 for the word mark "UXi" for digital marketing services from the USPTO.

28.    Madwire applied for and received registered trademark number 4600011 for the design mark "LLA Local Listing Ads" for digital marketing services from the USPTO.

29.    Madwire applied for and received registered trademark number 4707529 for the design mark "Top Rated Local" for digital marketing services from the USPTO.

30.    Madwire applied for and received registered trademark number 4532541 for the word mark "Natural Listing Ads" for digital marketing services from the USPTO.

31.    The trademarks listed in paragraphs 23-30 will be collectively referred to as the "Madwire Trademarks."

32.     Madwire's Marketing 360 Verticals have a distinct look and feel and have acquired secondary meaning as a trade dress source identifier of Madwire's services.

33.     Madwire places the public on notice of its trademark registrations by placing a ® after each of the registered trademarks when they are used on Madwire's websites, in advertisements and wherever the marks are used.

34.     Madwire has expended substantial time, money, and resources marketing, advertising, and promoting the digital marketing services sold under the Madwire Trademarks and the trade dress of the Marketing 360 Verticals.

35.     Madwire offers and sells its digital marketing services under the Madwire Trademarks and through the Marketing 360 Verticals to small and medium sized businesses.

36.     The services Madwire offers under the Madwire Trademarks and through the Marketing 360 Verticals are of high quality and are recognized as a leader in the industry.

37.     As a result of Madwire's expenditures and efforts, the Madwire Trademarks have come to signify the high quality of the services designated by the Madwire Trademarks, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Madwire.

**Defendants' unlawful activities**

38.     Upon information and belief Defendant brought the current version of IdentityLabs.com live on or around December of 2015.

39.     The current version of Identitylabs.com reproduces identical or substantially similar reproductions of the protected items on Madwire's marketing360.com website including identical or substantially similar 2d graphics, artwork, logos, pictures, text, layout, design, trademarks as well as the overall look and feel of the website.

40.     The Defendants had access to the protected works because they were publically available on the world wide web at all times after going live on May 2014.

41.     Further, given the extensive marketing campaigns Madwire has employed to promote marketing360.com it is extremely unlikely that anyone in the industry, such as Wood and Identity Labs, would be unfamiliar with the site.

42.     Upon information and belief, The Defendants' site has been "live" in substantially the same form since December of 2015.

43.     Upon information and belief, Wood has been actively promoting Identity Labs and identitylabs.com during the time it has been live with the infringing content.

44.     Upon information and belief Wood has personally profited from identitylabs.com.

45.     Defendant Wood lists Identity Labs and identitylabs.com on his professional LinkedIn page.

46.     Defendant Wood has posted several links to identitylabs.com and Identity Labs promotional materials on his Facebook and Twitter page.

47.     Wood tweeted the below screenshot promoting his appearance at a Growth Hacking 101 conference in March 2016 on behalf of Identity Labs.



48.   Upon information and belief, Wood spoke at the aforementioned Growth Hacking

conference in March 2016, his bio from the speech materials shows him speaing on behalf of and

promoting Identity Labs.

49.   Below is a screenshot of a link posted on Defendant Wood's Facebook page on

July 28, 2016. It is a slide deck from a presentation Wood gave titled Hacking SEO. The post

and accompanying PowerPoint reference Identity Labs and identitylabs.com several times.



50.    Upon information and belief, Wood spoke at a Growth Marketing conference in San Diego in promotion of Identity Labs and identitylabs.com on December 7, 2016.

51.    Upon information and belief, apart from the speaking engagements listed herein, Wood has spoken publicly promoting Identity Labs numerous times.

52.    Defendant Wood has no business relationship with Madwire and has no license or right to use any of Madwire's intellectual property.

53.    Madwire mailed a cease and desist letter to Identity Labs registered address on June 17, 2016.

54.    Madwire emailed the same cease and desist letter to Identity Labs primary email address, info@identitylabs.com.

55.    Madwire received no response to either the mailed letter or the email.

10

56.     The Defendants' website has remained live throughout this entire process and continues to damage Madwire as of this filing.

**Defendants' Infringement of Madwire's Copyrighted Content**

57.     The Defendants have, without authorization, infringed upon Madwire's copyrights by reproducing several copyright protected items on identitylabs.com.

58.     A side-by-side comparison of Madwire's website, marketing360.com (Exhibit "A") protected by copyright pursuant to the registration of "Marketing360.com" with the infringing website, identitylabs.com (Exhibit "B") demonstrates an identical or substantially similar reproduction of text, 2-d artwork, photographs, design arrangement of the website and other elements protected by the copyrighted works, in violation of Madwire's exclusive rights afforded by 17 U.S.C. § 106.

59.     A full list of the Defendants' copyright infringement is too great to list here, however defendant reproduced entire paragraphs, blocks of text, images, photographs and design elements throughout.

60.     In some instances, Defendant identically reproduced the text, 2d artwork, photographs and other elements.

61.     In other instances, the Defendants made minor modifications to the images or text so that it is not an identical reproduction, but a substantially similar reproduction.

62.     While not exhaustive, nor exclusive, the following are just a few examples of the outrageous copying and substantial similarities between Madwire's protected works and the infringing website.

63.     Example of the header menu from marketing 360.com

Example of the header menus from identitylabs.com



64.    Example design illustration marketing360.com



Example design illustration from identitylabs.com



65. Example design illustration from marketing360.com:



Example design illustration on identitylabs.com:



66. Example blog post from marketing360.com:

## Marketing Propelled By Data

**Understanding the Person Behind the Search**

Online marketing is a gold mine of data. Buyers tell us what they care with the keywords they choose. We can track what messaging draws people into a website. Once there, we get exact information on how they behave: pages visited, time spent reading content, buttons clicked.

Now, more detailed data and advanced marketing software allows us to create detailed customer profiles. No more assumptions about personas or market segmentation—you have data points with concrete details.

The better you know who you're talking to, the better you can **craft a persuasive message**.

**Targeting Everyone is Targeting No One**

One of the biggest mistakes in online marketing is being too general. It's much harder to market a site with no specialization or niche. And when target too general an audience, you targeting the *needs* of no one.

There is nothing that converts better than the response: *This is just what I was looking for!* If you can evoke that thought, you did it right.

With the software of Social Targeting Ads™, you plan to get a **specific response**. Ads are developed based on demographics like age, gender, and location. You can also target interests. If your target is moms deciding on a dentist in the area, then family health will be a good theme. If you're targeting older men with a fetish for dress shoes...well...you won't create content that includes young guys in running shoes.

**Contextual Advertising**

Social Targeting Ads™ marketing software allows you to manage display ads based on content. For example, if you sell golf equipment, you can target display ads on an article about Tiger Woods or an instructional page on how to improve your putting (where you could even target an ad with a line of putters).

Display advertising can work well, but it is also notorious for vague ROI metrics. With Social Targeting Ads™, you'll have data on how this sales funnel is actually driving conversions. It's all about putting the right ads in front of the right audience.

Related articles from **our blog.**



market domination starts here.

**Plans & Pricing**

Plus, request a live demo.

Example blog post from identitylabs.com:

## Marketing Propelled By Data

Online marketing is a literal gold-mine of useable data. Buyers tell us what they care about with the keywords they choose. We can track what messaging draws people into a website and what keeps them there. Once on a site, we can get exact information regarding how they behave: pages visited, time spent reading content, buttons clicked, articles or images shared and more.

More detailed data and advanced marketing software allows us to create detailed customer profiles. We no longer have to make assumptions about personas or market segmentation–you will have data points with concrete details about your target audience.

Since this allows you to know who you're talking to, which means that you can craft the most persuasive message, that targets your specific audience, prospect and buyer.

## Marketing is not reaching ALL the people, it is reaching the RIGHT people!

One of the biggest mistakes companies make in online marketing is being too general. It's much harder to market a brand, service or website with no target, specialization or niche. When a campaign is too general, you end up not targeting (or reaching) anyone!

There is nothing that converts better than a potential customer seeing your ad or content and thinking: "This is just what I was looking for!" If you can evoke that response, you did it right!

With the software of Social Targeting Ads™, you plan to get this kind of specific response. Our ads are developed based on demographics like age, gender, and location. You can also target interests. If your target is a mom deciding on a family doctor in the area, then family health will be a good theme. If you're targeting older men with a classic car hobby…well… you won't create content that includes young guys in new cars.

## Contextual Advertising

Social Targeting Ads™ marketing software allows you to manage display ads based on content. For example, if you sell golf equipment, you can target display ads on an article about Tiger Woods or an instructional page on how to improve your putting. You could even target an ad with a line of putters.

Display advertising can work well, but it is also notoriously difficult to track ROI metrics. But, with Social Targeting Ads™, you'll have data on how this sales funnel, via your display ads, is actually driving conversions. It's all about putting the right ads in front of the right audience.



*market domination starts here.*

Plans and Pricing

67. Design and image example on marketing360.com:



Local Listing Ads™

Design and image example on identitylabs.com



**Site Alive**

68.  An example of website text content on marketing360.com:



An example of website text content on identitylabs.com:



69. The Defendants have no license, right or permission to use Madwire's copyright protected material on their website identitylabs.com.

**Defendants' Use of Infringing Trademarks and Trade dress**

70.     On identitylabs.com, Defendant also identically reproduces each of the Madwire Trademarks listed in paragraphs 23-30 in a manner likely to cause confusion or to deceive consumers by creating a false designation as to the origin of the services.

71.     A full accounting of the Defendants infringement of Madwire's trademarks is too great to list here, however the following is a non-exclusive and non-exhaustive list of some examples of the use of Madwire's trademarks.

72.     Below is an example of the Defendants' use of Madwire's registered trademark registration number 4784512 for the design mark "Marketing 360." This image was taken from identitylabs.com.



73.     Below is an example of the Defendants' use of Madwire's registered trademark registration number 4600011 for the design mark "LLA Local Listing Ads." This image was taken from identitylabs.com.



**Site Alive**

74.    Below is an example of the Defendants' use of Madwire's registered trademark registration numbers 4598488 for the design mark "UXi Convert Intelligently" and 4784512 for the design mark "Marketing 360." This image was taken from identitylabs.com.



75.    Below is an example of the Defendants' use of Madwire's registered trademark registration number 4707529 for the design mark "Top Rated Local." This image was taken from

identitylabs.com.



76.     Below is an example of the Defendants' use of Madwire's registered trademark registration number 4459243 for the word mark "Marketing 360" and registered trademark number 4299589 for the word mark "Top Placement Ads." This image was taken from identitylabs.com.



77.     Below is an example of the Defendants' use of Madwire's registered trademark registration number 4532541 for the word mark "Natural Listing Ads." This image was taken from identitylabs.com.



78.     As with the copyright infringement, further examples of the Defendants' infringement of the Madwire Trademarks can be seen in the full screenshot of the Defendants' website attached as Exhibit B.

79.     Identitylabs.com also reproduces the layout, colours, images, design elements, text and trademarks of Madwire's website. In doing so, the Defendants have reproduced the same look and feel of the Marketing 360 Verticals in a manner so as to cause confusion or to deceive consumers by creating a false designation as to the origin of the services, and thus infringing upon Madwire's trade dress rights. See Exhibits A and B.

20

80.     On June 17, 2016, Madwire's counsel sent a cease and desist letter to Defendant objecting to the Defendants' use of the Madwire Trademarks via email and US Mail.

81.     To date, Madwire has received no response to its cease and desist letter and, after reasonable inquiry, has no evidence that Defendant has complied with the demands set out in Madwire's counsel's cease and desist letter.

82.      The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' Services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that the Defendants' Services originate from, are associated or affiliated with, or otherwise authorized by Madwire.

83.     Upon information and belief, the Defendants' acts are willful with the deliberate intent to trade on the goodwill of the Madwire Trademarks and trade dress, cause confusion and deception in the marketplace, and divert potential sales of Madwire's Services to the Defendant.

84.     The Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Madwire and to its valuable reputation and goodwill with the consuming public for which Madwire has no adequate remedy at law.

## COUNT ONE

### (Infringement of Copyrights)

85.     Madwire repeats and realleges paragraphs 1 through 84 hereof, as if fully set forth herein.

86.     This Count arises under the Copyright Act of 1976, Title 17 United States Code §101 et seq.

87.     The Defendants' intentionally copied the images, text, colour scheme, photographs and other design elements from Madwire. The Defendants' entire website design is either identical or substantially similar to Madwire's.

88.     Madwire's website design, images, text and other design elements are wholly original, creative works that constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq. Madwire owns the exclusive rights and privileges in and to the above referenced copyrighted works, and in compliance with the law, has received from the Register of Copyrights the appropriate certificates of registration, which constitute prima facie evidence of the validity of the copyrights in the works and of the facts stated in the certificates. At all relevant times, Madwire has owned all applicable rights, titles and interest in and to these copyrighted works.

89.     By its actions alleged above, the Defendants have infringed and will continue to infringe Madwire's copyrights in marketing360.com by, inter alia, copying, publicly displaying, and distributing the Defendants' website as well as its images, text and other content, each of which are identical or substantially similar to and derived from marketing360.com, without any authorization or other permission from Madwire. Identity Labs has violated Madwire's exclusive rights under 17 U.S.C. § 106.

90.     On information and belief, the Defendants' infringement of Madwire's copyrights has been deliberate, willful and in utter disregard of Madwire's rights.

91.     Identity Labs has realized unjust profits, gains and advantages as a proximate result of its infringement, and will continue to realize unjust profits, gains and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

92.     As a direct and proximate result of the Defendants' willful copyright infringement, Madwire has suffered and will continue to suffer actual damages. Madwire is entitled to it actual damages and any damages and any gains, profits, and advantages obtained by Identity Labs as a result of its acts of infringement and its use and publication of the copied materials, 17 U.S.C. § 504(b). Alternatively, at Madwire's election, it is entitled to an award of the maximum statutory damages as permitted by the Copyright Act, 17 U.S.C. § 504(c).

93.     Madwire has no adequate remedy at law for the injuries currently being suffered, and the additional injuries that are threatened, and the Defendants will continue to engage in their wrongful conduct and Madwire will continue to suffer irreparable injury that cannot be adequately remedied at law unless the Defendants are enjoined from engaging in any further such acts of infringement.

94.     By reason of the foregoing, Madwire is entitled to permanent injunction preventing the further reproduction and distribution of the Madwire copyrights, all profits received by Identity Labs from the sale of services while their website was live, all consequential damages suffered by Madwire, or statutory damages for willful infringement in the amount to be determined at trial, and Madwire's expenses of litigation, including Madwire's reasonable attorneys' fees.

## COUNT TWO

### (Contributory Infringement of Copyrights)

95.     Madwire repeats and realleges paragraphs 1 through 94 hereof, as if fully set forth herein.

96.     The Defendants have directly infringed upon Plaintiff's copyrighted works.

97.     Upon information and belief Defendant Wood, as the sole member of Identity Labs, LLC, caused and materially contributed to the infringing acts by causing, encouraging, inducing, allowing and/or assisting others to reproduce and distribute the Madwire copyrights.

98.     Upon information and belief Defendant Wood, as the sole member of Identity Labs, LLC, had knowledge of the infringing acts relating to the Madwire copyrights.

99.     The acts and conduct of Defendants, as alleged above in this Complaint constitute contributory copyright infringement.

100.    By reason of the foregoing, Wood is liable for damages in an amount to be determined at trial plus interest, attorneys' fees and costs.

## COUNT THREE

### (Vicarious Infringement of Copyrights)

101.    Madwire repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102.    Defendants have directly infringed upon Plaintiff's copyrighted works.

103.    Upon information and belief, Defendant Wood, as the sole member of Identity Labs, LLC, had the right and ability to control the infringing acts of Defendant Identity Labs.

104.    Upon information and belief, Defendant Wood obtained direct financial benefit from the infringing activities of Defendant Identity Labs.

105. By reason of the foregoing, Wood is liable for damages in an amount to be determined at trial plus interest, attorneys' fees and costs

## COUNT FOUR

### (Federal Trademark Infringement)

106.  Madwire repeats and realleges paragraphs 1 through 105 hereof, as if fully set forth

herein.

107.   The Defendants' unauthorized use in commerce of the Madwire Trademarks as described herein is likely to cause confusion, mistake, or deception in that consumers are likely to believe that the Defendants' services are legitimately connected with Madwire. and constitutes trademark infringement in violation

108. The Defendants' use of the Madwire Trademarks marks infringes Madwire's rights in the Madwire Trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

109.   Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Madwire's prior rights in the Madwire Trademarks and with the willful intent to cause confusion and trade on Madwire's goodwill.

110.   The Defendants' conduct is causing immediate and irreparable harm and injury to Madwire, and to its goodwill and reputation, and will continue to both damage Madwire and confuse the public unless enjoined by this court. Madwire has no adequate remedy at law.

111.   By reason of the Defendants' conduct, Madwire has been damaged and is entitled to, among other relief, injunctive relief and an award of actual damages, The Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest. Alternatively, at Madwire's election, it is entitled to an award of the maximum statutory damages as permitted by the Lanham Act 15 U.S.C. 1117.

## Count Six

### (Contributory Trademark Infringement)

112. Madwire repeats and realleges paragraphs 1 through 111 hereof, as if fully set forth herein.

113.    Defendants directly infringed upon Plaintiff's registered Trademarks.

114.    Upon information and belief Defendant Wood, as the sole member of Identity Labs, LLC, had knowledge of the infringing acts relating to the Madwire trademarks.

115.    Upon information and belief Defendant Wood, as the sole member of Identity Labs, LLC, had direct control and monitoring of the instrumentality used by Identity Labs to infringe the Madwire Trademarks.

116.    Upon information and belief Defendant Wood, as the sole member of Identity Labs, LLC, caused and materially contributed to the infringing acts by causing, encouraging, inducing, allowing and/or assisting others to reproduce and distribute the Madwire copyrights.

117.    By reason of the foregoing, Wood is liable for damages to Madwire in an amount to be determined at trial plus interest, attorneys' fees and costs.

## COUNT FIVE

(Lanham Act Unfair Competition, Trade Dress Dilution)

118.  Madwire repeats and realleges paragraphs 1 through 117 hereof, as if fully set forth herein.

119. Madwire's trade dress is non-functional, famous, and inherently distinctive within the meaning of the Lanham Act. By copying the images, colours, layout, design and overall appearance of the Marketing 360 Verticals, the Defendants have copied and diluted Madwire's particular trade dress.

120. The distinctive design of the Marketing 360 Verticals is not functional and is not essential to the use or purpose of the website. The design is merely an ornamental arrangement of features. Accordingly, the distinctive design of the Marketing 360 Verticals and the arrangement of features of the websites are protectable as trade dress.

121.   Through their intentional copying of the Madwire trade dress and using them in commerce, the Defendants are knowingly and intentionally diluting their trade dress in the eyes of the general public.

122.   The Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Madwire.

123.   The Defendants' conduct as alleged herein is intended to and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, or affiliation of the Defendants' Services

124.   The Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

125.   The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Madwire, and to its goodwill and reputation, and will continue to both damage Madwire and confuse the public unless enjoined by this court. Madwire has no adequate remedy at law.

126.   Madwire is entitled to, among other relief, injunctive relief and an award of actual damages, the Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT SIX

### (Colorado Common Law Misappropriation and Unfair Competition)

127.   Madwire repeats and realleges paragraphs 1 through 126 hereof, as if fully set forth herein.

128.    Madwire has invested substantial time, energy and other resources in creating and marketing its products and services, in developing its business and in developing its associated consumer recognition, reputation and goodwill.

129.    Madwire's business reputation in the digital marketing industry, and among consumers, with its Marketing 360 Brand and associated vertical websites. Through Madwire's efforts, its knowledge, and its skill, this reputation has become a valuable asset to Madwire's organization and business.

130.    The Defendants have wilfully converted, and misappropriated the business, Madwire's Marketing 360 brand and creative assets in a manner that gains an unfair commercial advantage, damages Madwire's legitimate business interests and allows consumers to be misled.

131.    Through their actions the Defendants have intentionally and/or with disregard for the law, misappropriated Madwire's business value, Madwire's reputation and Madwire's property. Such business value, reputation, and property were created by Madwire as the result of significant expenditures of labor, skill, and money. Such business value, reputation, and property were used by the Defendants for significant commercial gain in the lighting industry and also in direct competition with Madwire's legitimate business interests. These actions represent an unlawful appropriation of the product of Madwire's skill, labor and money and a misappropriation of Madwire's business, property, rights and reputation.

132.    The Defendants' actions have given them a special advantage in its competition in the digital marketing industry because they were not burdened with the expense of creating, maintaining, or enforcing the business, property and rights misappropriated from Madwire or generating the initial business value, reputation, and/or property of Madwire.

133.    The Defendants have committed unlawful acts of misappropriation through actions that wrongfully deceive and/or divert potential business opportunities and consumers away from Madwire's business, services, and/or products.

134.    Unfair commercial advantage has been attained by the Defendants' actions usurping the skill, labor and money spent to design, develop, register and enforce the Madwire trademarks, copyrights and other assets developed by Madwire.

135.    Defendant has usurped the brand value and asset value created by Madwire to profit, accelerate brand growth and/or accelerate success in the digital marketing industry. These actions constitute misappropriate by usurpation of Madwire's assets in violation of applicable common law, state law and/or federal law.

136.    By reason of the foregoing, the Defendants are liable for damages in an amount to be determined at trial plus interest, attorneys' fees and costs.

**WHEREFORE**, Madwire requests judgment as follows:

A.  For a permanent injunction enjoining the Defendants and all persons acting in concert with them from using any of the Madwire Copyrights, Madwire Trademarks or any other trademarks that are confusingly similar to the Madwire Trademarks, or using any trade dress of Madwire in connection with marketing or website development or from otherwise using Madwire trademarks in any way causing the likelihood of confusion, deception, or mistake as to the source, nature, or quality of the Defendants' services and to deliver to Court for destruction or other reasonable disposition all materials bearing the infringing trade dress in the Defendants' possession or control.

B.      For any and all actual damages, trebled, sustained by Madwire in an amount to be determined at trial;

C.     Alternatively, at Madwire's election, an award of the maximum statutory damages as permitted by the Copyright Act, 17 U.S.C. § 504(c) and the Lanham Act, 15 U.S.C. § 1117.

D.     For all of the Defendants' profits wrongfully derived from its egregious, intentional and willful infringement of Madwire's intellectual property rights;

E.     For exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

F.     For costs of suit herein;

G.     For reasonable attorney's fees; and

H.     For any other relief as the Court deems just and proper.

Dated: January 11, 2017
        Fort Collins, CO

Respectfully submitted,

Madwire, LLC

 s/ Brian Kelly _____
Brian Kelly
Madwire, LLC
3420 E. Harmony Rd.
Fort Collins, CO 80528
Telephone: 970-541-3340
Email: brian.kelly@madwiremedia.com

Attorney for Plaintiff Madwire